(No. 27875.—

THE PEOPLE *ex rel.* ELLIS H. REICH *et al.*, Appellants, *vs.*
ARTHUR A. McCOY *et al.*, Appellees.

*Opinion filed May 16, 1944—Rehearing denied September 18, 1944.*

CHARLES E. TURNER, State's Attorney, WALTER I. MANNY, both of Mt. Sterling, JOHN T. INGHRAM, and WILSON & SCHMIEDESKAMP, both of Quincy, for appellants.

WILLIAMS & WILLIAMS, of Pittsfield, for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

The People of the State of Illinois, on the relation of Ellis H. Reich, *et al.,* filed in the circuit court of Brown county a complaint in *quo warranto* to require the defendants, as pretended members of the board of education of Community High School District No. 67 in said county, to show by what warrant they hold and exercise the power of members of the board of education of said community high school district. The complaint was filed in the form authorized by the statute on *quo warranto* as amended in 1934. (Ill. Rev. Stat. 1943, chap. 112, sec. 1.) The defendants answered, setting out in detail what they contended was essential under sections 89a to 91 of the School Law. (Ill. Rev. Stat. 1943, chap. 122, par. 97-99.) A motion to strike was filed and the answer was amended by adding a paragraph setting forth the curative act of March 18, 1943. (Laws of 1943, page 1257.) Petitioners made a motion to strike the answer and the justification of the respondents, as amended, which was overruled by the court. Petitioners filed a reply, and, among other things, contend they set forth new matter which was not answered. This will be commented upon later.

A hearing was had before the court without a jury, and a judgment was entered finding the defendants not guilty as charged in the complaint. The court also made a finding showing that the several requirements existed bringing said case within the provisions of said curative act, and, in addition, found that the territory described in the petition was compact and contiguous, and that the defendants were not guilty of usurping said offices. This appeal follows.

It is conceded by counsel for appellees that the proceedings taken under the general School Law, prior to the enactment of the curative act, were such as would require the court to find the district had been illegally organized, but contend that after the adoption of the curative act, and proof that the requirements therein contained existed, it had the effect of creating a school district containing the same territory by an act of the legislature, confirming the rights of appellees to act as members of the board of education thereof. The principal contention made by appellants is that the curative act cannot be given effect because in several respects it is in violation of the constitution.

The curative act is too long to set forth in full, but in general it provides that in all cases where (1) the county superintendent of schools of any county has heretofore received a petition signed by one hundred or more legal voters residing in any contiguous and compact territory, which is proposed to be organized into a community high school district; and (2) an election was called for such purpose by the county superintendent of schools, and a majority of the voters voted in favor of such organization; and (3) where at a subsequent election similarly called and held, a board of education was selected by the voters and such persons so acting as board members have met and organized as a board of education and functioned as such, each such election is declared legal, and "such territory is hereby declared legally and validly organized and established as a community high school district and a valid and existing school district and body politic and corporate of the State for the purpose of establishing and maintaining a high school;" and the act then specifies that such district is legal and valid notwithstanding certain omissions required by the general School Law to organize a valid community high school district thereunder.

The omissions, which are waived, cover substantially all of those necessary for a legal organization, such as population of the territory, assessed value, attempting to organize within one year of a prior similar attempt, that no notice of filing the petition was transmitted to the Superintendent of Public Instruction, that no report that the territory was compact and contiguous, or on other matters required by statute, was made by the Superintendent of Public Instruction prior to the filing of the petition, that no publication of such report had been made after the filing of the petition, and that the ballots were not in proper form. The second section of the curative act in effect validates all proceedings by the purported board of education, and the board elected is declared to be legal and valid and to constitute a corporate authority of such district.

The contention of appellants, broadly stated, is that if jurisdiction was absent in the first instance to organize a community high school under the statute, then the curative act is unconstitutional and void, because none of the requirements to bring it within the provisions of the curative act legally existed.

Appellees substantially concede there is such a material failure in the proceedings under the School Law that if the validity of the district rested upon them the writ would be compelled to issue; but content themselves by saying that under the constitution requiring an efficient system of free schools the curative act has the result of a direct declaration that the school district, which the inhabitants thereof intended to create under the general School Law has been created by a special act of the legislature. This requires an examination of the general law upon this subject before the specific points argued by counsel can be applied.

The constitution of the State provides: "The general assembly shall provide a thorough and efficient system of free schools, whereby all children of this state may receive a good common school education." (Art. VIII, sec. 1.) We have construed this provision as authorizing school districts by a direct legislative act without any vote upon the question. (*People ex rel. Russell* v. *Graham,* 301 Ill. 446; *People ex rel. Morris* v. *Opie,* 301 Ill. 11; *People ex rel. Leighty* v. *Young,* 301 Ill. 67; *People ex rel. Vautrin* v. *Madison,* 280 Ill. 96; *People ex rel. Fitzgerald* v. *Stitt,* 280 Ill. 553; *People ex rel. Sievert* v. *Peltier,* 275 Ill. 217.) However, when the legislature undertakes to create a school district, in order to comply with the constitutional requirement of an efficient school system the district so created must be compact, and an absence of this requirement would render the district illegal. (*People* v. *Young,* 301 Ill. 67; *People ex rel. Vick* v. *Kirkham,* 301 Ill. 45.) It has been also held that the legislature may organize a school district and refer to an election held under the general School Law as descriptive of the territory which the legislature by special act designates as a school district. *People* v. *Graham,* 301 Ill. 446; *People* v. *Madison,* 280 Ill. 96; *People* v. *Opie,* 301 Ill. 11; *People* v. *Young,* 301 Ill. 67.

The appellees contend the legislature can validate anything which the legislature might have authorized, and cite many authorities in which substantially this language is used. Appellants concede the legislature may pass a curative act remedying a defect in a proceeding where there is an omission of an act which the legislature might have dispensed with in the first instance. Between these two views lies the question which requires our consideration, because if an act of the legislature is void in failing to comply with constitutional requirements, then it would appear that a curative act, if it contained the same defect, would likewise be void.

Among the numerous matters in which appellants claim the curative act is violative of the constitution is that there was no notice of the election under which the district purported to be organized in the first instance; and that lack of notice is such a serious failure to observe constitutional processes that no election was ever held, as required by the curative act, before it became effective.

The appellees' answer, as amended, justifying their title to office sets out the record of the county superintendent of schools, and therein shows his order dated August 29, 1941, calling an election to organize a community high school district, fixing the date of the election as September 9, 1941, and designating eight polling places in the territory. The return also contained the affidavit of one F. M. Dorman, dated March 19, 1943, stating on oath that on August 29, 1941, he posted eleven notices of the election called by the county superintendent of schools in eleven of the most public places in said territory. The answer also contains a copy of the notice of the election purported to have been called on September 11, 1941; to be held September 23, 1941, for the purpose of electing a community high school board of education. It also contains the affidavit of the county superintendent of schools, dated March 19, 1943, showing he posted said notices of election in eleven of the most public places in said territory. The return prior to the amended answer showed the affidavit of one Dorman was made August 30, 1941, as to posting notices of the organization of the district, and the affidavit of the county superintendent of schools as having posted notices, September 12, 1941, of the election of the board of education. The record also shows these affidavits were withdrawn by appellees and those above substituted in their place.

The reply of the appellants denies that any of said notices of election were posted for either of said elections within said territory for the requisite time and in the requi-

site number of places, as provided by the School Law. In offering proof of the legality of the organization of said district upon trial the record of the county superintendent of schools showed only that the notices of election had been prepared and made by the county superintendent of schools, but there was no evidence offered that said notices were posted ten days prior to the date of the election, or in ten public places within the territory in either case. And apparently the record did not contain any proof of posting notices of election. It is to be further observed that the dates of the affidavits set forth in the amended answer are more than a year after the filing of the petition for *quo warranto*. Thus, while a proper notice for each of said elections appears to have been prepared by the county superintendent of schools, there is no proof offered, nor does it appear in the records of the county superintendent of schools, that they were either posted ten days before the election or in ten public places within the territory. This is the principal ground claimed to invalidate the curative act, because it is contended it requires an election as a prerequisite to validation, and there can be no election without notice and proof of notice of the calling of the election.

The appellant also urges several other grounds that deprived the county superintendent of schools of jurisdiction to call an election to organize such a school district, among which is a failure of the petition to show that it contained fifteen hundred inhabitants, or had within it property of the assessed valuation of at least $1,000,000, and several other omissions required for the organization of a community high school district under the statute. Most of these objections have been decided by this court adversely to appellants' contentions. Thus we have held that the legislature may organize a school district without a petition; (*People* v. *Graham,* 301 Ill. 446; *People* v. *Madison,* 280 Ill. 96;) that an election to organize a high school

district in which improper votes were cast may be validated; (*People* v. *Peltier,* 275 Ill. 217; *People* v. *Opie,* 301 Ill. 11; *People* v. *Young,* 301 Ill. 67;) that the fact that the petition for organizing a school district is not signed by the requisite number of voters does not prevent its being validated, (*People* v. *Madison,* 280 Ill. 96; *People* v. *Opie,* 301 Ill. 11,) nor does the fact that the ballots did not conform to the statute, (*People ex rel. Hanks* v. *Benton,* 301 Ill 32,) or that the territory had been previously included in another school district. (*People* v. *Benton,* 301 Ill. 32.) And, in general, we have said what the legislature might have authorized it may validate. *People* v. *Madison,* 280 Ill. 96; *People ex rel. Kastning,* v. *Militzer,* 272 Ill. 387.

It is apparent that all of the foregoing were matters which were required by the general School Law, and since the legislature had authority to require such conditions it likewise has authority, in case they were not observed, to waive them by a curative act. Since substantially all of the requirements of the School Law which were not observed in the present instance, except that of failing to post notices, come within these types of cases we deem it unnecessary to consider any point involving the constitutionality of the curative act other than that of failure to post notices of the two elections.

It is asserted by appellees that the failure to give notice of the election, or to hold it in accordance with the provisions of the statute may likewise be waived upon the theory that if the legislature can create a district by legislative act without holding an election it can likewise validate the failure to give notice in the time and manner required by law, where it has provided by general law the manner in which school districts may be authorized. The legislature had the power to create by legislative act a school district out of the territory involved in this case, without reference to the provisions of the general School Law, but by doing that alone it would not bring into being

or render effective any of the acts performed by school officers selected under the general School Law within an illegally organized district, and the result naturally desired by persons interested in the defectively organized school district.

The contention of the appellants is twofold: (1) that the legislature is without power to ratify an invalid election by curative act; and (2) that the curative act in providing it shall apply to all cases where an election has been called by the superintendent of schools contemplates that such election must be conducted according to law to come within its provisions.

We have examined the cases cited by appellees, and of these find only one in which the question of validating a failure to post notices of an election was decided. (*People v. Opie*, 301 Ill. 11.) This case holds the failure to post such notices may be validated. It may also be inferred from *People v. Madison*, 280 Ill. 96, although it does not distinctly appear the question was involved in that case. Likewise, in *People v. Graham*, 301 Ill. 446, the question was in the case but not passed upon. The court, in commenting, said: "Granting, but not deciding, that the legislature was without power to declare a void election valid, it is not essential to the curing of the defects in the organization of this district that the elections be declared valid." The other cases holding defects in elections may be cured, involved the use of improper ballots, failure to follow the ballot law and permitting unqualified persons to vote, all of which were within the power of the legislature to cure.

On the other hand, the appellants draw to our attention the cases of *Roberts v. Eyman*, 304 Ill. 413, *People ex rel. Mark v. Hartquist*, 311 Ill. 127, and *Southworth v. Board of Education*, 238 Ill. 190, which hold to the contrary. These cases all involved validating acts. *Roberts v. Eyman* was a bill in equity to enjoin the collection of taxes for

the retirement of bonds of a school district. In an election to issue bonds to pay for a schoolhouse and site the record failed to show notices of election for such purpose had been posted. A curative act was passed providing that where a proposition by the board of education had been submitted at an election, and had been carried by a majority of votes, the same was validated in cases where notices had not been posted in ten public places. We held that the curative act was void, as notice is of the very gist of such a case, and that it was beyond the power of the legislature to cure. Appellees say this case is not applicable because the issuance of bonds was involved, but in *People* v. *Hartquist* the matter came before the court in a *quo warranto* case. Under the then prevailing practice a petition for leave to file an information was filed, which contained the allegation there was no record in the office of the superintendent of schools, or other officials, showing notice of an election for the purpose of voting for or against a proposition to establish a high school district had been posted at least ten days in ten of the most public places throughout the territory, as required by statute. Upon motion, the trial court struck the petition for leave to file, and on appeal to this court we held, upon the authority of *Roberts* v. *Eyman* that the failure to give notice of an election went to the very root of the proceeding, and could not be validated by an act which had been adopted purporting to cure any defect in the time or manner of calling an election, as well as validating the district in question.

The case of *Southworth* v. *Board of Education* involved an act purporting to cure an invalid election called for the purpose of selecting a schoolhouse site. The act purported to cure all elections duly called and held. We held that an election held without proper notice was not duly called and held, and that the curative act was invalid. It is thus apparent there is some conflict in the decisions upon this highly important question.

Referring now to the propositions involved in this case, the curative statute provides that in all cases three events must concur before the illegal school district may be a valid and existing school district, among which is "after the filing of such petition a majority of the voters in such territory at an election called for that purpose by the county superintendent of schools voted in favor of the organization of such territory into a community high school dis-. trict." Under the facts in this case has this condition been performed?

The term "election" necessarily involves consideration not only of calling it for a specific purpose, but giving the electors the opportunity to vote upon the proposition involved. As pointed out in the *Hartquist case* the question of notice goes to the very foundation. If the county superintendent of schools prepares the proper form of notice of election in his office, who of the inhabitants interested will know there is an election, or what the proposition may be, unless given an opportunity to know by posting notice? The curative act in specifying "at an election called" referred to one required to be called for legally organizing a high school district under the School Law. Such required a description of the territory and ten days' notice by posting in ten public places in the territory involved. Under the record before us the county superintendent of schools did prepare a notice, but it does not appear the inhabitants of the territory were given notice, because there is no proof of posting at any time or any place. This can not be called an election.

It may be urged that the affidavits made a year or more after the calling of the respective elections is some proof that notice was given. They were set out in the answer, but not contained in the record of the county superintendent of schools when introduced in evidence. The official acts of the county superintendent of schools must be established by the record of his office, and such record

is the only evidence. *People* v. *Hartquist*, 311 Ill. 127; *People ex rel. Pfeiffer* v. *Morris*, 365 Ill. 470; *People ex rel. Toman* v. *Chicago Heights Terminal Transfer Railroad Co.* 375 Ill. 590.

We also have serious doubt as to whether the curative statute was for the purpose of creating a school district by legislative act. In the first instance it required three concurring events, all of which were requirements of the general School Law, *viz.,*—a petition filed with the county superintendent of schools signed by one hundred voters; an election carried by a majority; and the electing and functioning of the board of education. It would seem strange that the General Assembly, intending to create a special district without reference to the general School Law, should require as a condition precedent the performing of certain requirements of the general School Law. Further, if the curative act validates the elections and waives the requirements it could have dispensed with in the general School Law, it would appear to have the other effect of confirming a school district defectively organized rather than creating a new one. If that is true, then the district is organized under the general School Law rather than by an independent act of the General Assembly.

We have reached the conclusion that the purpose of the curative act mentioned herein was that of validating a district which had been illegally organized under the general School Law. When an election is mentioned in the statute it contemplated a *legal* election. In our opinion an election, illegal because of want of notice of the time and place thereof, cannot, under our most recent authorities, be validated. Irregularities in the conduct of an election may be cured by subsequent legislation, but notice of the time and place of holding an election, when not fixed by law but fixed by the authority calling the election, is a condition essential and precedent to the right to hold the election, and if notice is not given for the length of time,

and by the number of notices required by statute, the election will be void. (*People* v. *Hartquist,* 311 Ill. 127; *Roberts* v. *Eyman,* 304 Ill. 413; *Trustees of Schools* v. *Hoyt,* 311 Ill. 532.) *People* v. *Opie,* 301 Ill. 11, insofar as it holds that failure to give notice of an election called for the purpose of creating a high school district may be validated by the General Assembly, is hereby overruled.

It appears plain to us that the General Assembly, instead of creating a school district by special act out of the territory involved herein, undertook to validate an election otherwise void. Since the existence of a valid election was a necessary condition precedent to the curative act becoming effective, the necessary result must be that appellees hold no legal title to an office, because a valid election was never held to create the district under the School Law, and the legislature has not, in place thereof, created one by legislative fiat.

Appellants also contend the territory of the district is not compact and contiguous and does not furnish sufficient opportunity for education for all of the students within it. A great deal of testimony was taken upon this question. As pointed out above, among the constitutional requirements of a high school district is that it be compact and contiguous, but since the district was never legally organized or validated by legislative act it is unnecessary to consider the evidence offered on this point.

It is our conclusion that the appellees, on this record, failed to justify a title to the offices claimed by them, and the judgment is accordingly reversed and the cause remanded to the circuit court of Brown county, with directions to proceed in a manner not inconsistent with the views herein expressed.

*Reversed and remanded, with directions.*